IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 08-cv-00967-REB-BNB

PAMLAB, L.L.C., and
METABOLITE LABORATORIES,INC.,

Plaintiffs,

v.

HI-TECH PHARMACAL CO., INC., and
NEXGEN PHARMA, INC,

Defendants.

_____

**AMENDED ORDER**[1]

_____

This matter arises on **Defendant Nexgen Pharma, Inc.'s Motion to Disqualify** [Doc. #

55, filed 11/21/2008] (the "Motion to Disqualify").  I held a hearing on the motion on

December 17, 2008, and was prepared to receive evidence at that time, although neither party

introduced any.  See Religious Technology Center v. F.A.C.T.Net, Inc., 945 F. Supp. 1470, 1473

n.2 (D. Colo. 1996) (discussing the circumstances under which an evidentiary hearing is

necessary when ruling on a motion to disqualify).  Both the Motion to Disqualify and Pamlab's

response [Doc. # 60, filed 12/8/2008] are accompanied by affidavits and other materials,

however.

The Motion to Disqualify is DENIED.

_____

[1]The original Order [Doc. # 67, filed 1/9/2009] contains two errors at p.3, which are
corrected here by striking through the errors and inserting the corrections in ***bold italics***.

Prior to January 11, 2008, C. Randolph Ross was a lawyer with the law firm of Buchanan Ingersoll & Rooney ("Buchanan Ingersoll").  Beginning in August 2007, Buchanan Ingersoll represented two clients, Breckenridge Pharmaceuticals ("Breckenridge") and Nexgen Pharma ("Nexgen," a defendant here), in connection with a suit brought by Schering-Plough Healthcare Products Inc. (the "Schering-Plough litigation").[2]  Ross and Edward Allera were the lawyers at Buchanan Ingersoll primarily involved in the representation of Breckenridge and Nexgen.

In December 2007, Buchanan Ingersoll through Ross undertook to represent Pamlab (a plaintiff here) in litigation concerning the '496 Patent.  Pamlab's '496 Patent litigation is unrelated to the Schering-Plough litigation.  According to Nexgen:

> Ross [represented] Pamlab on the patent that is at issue in this case.  Ross filed a complaint on behalf of Pamlab against Cura Pharmaceutical Company ("Cura"), among others, alleging that Cura's vitamin product infringed Pamlab's Foltx patent and that Cura's advertising violated the Lanham Act. . . .  These allegations are virtually identical to those that Pamlab asserts against Nexgen in the present case. . . .  There can be little doubt that, in the course of Ross' prosecution of the Cura lawsuit, Pamlab apprised Ross of the identity of the other manufacturers against whom it planned to file similar proceedings in the future.

Motion to Disqualify at pp.2-3.

Effective January 11, 2008, Ross resigned from Buchanan Ingersoll and joined the law firm of Crowell & Moring.  After joining Crowell & Moring, Ross continued to represent Breckenridge in the Schering-Plough litigation.  In addition, Crowell & Moring through Ross

---

[2]Breckenridge was a defendant in the Schering-Plough lawsuit.  Nexgen was not a party in that litigation, but it supplied to Breckenridge the product at issue and had a duty to indemnify Breckenridge in the litigation.

continued to represent Pamlab in connection with litigation involving the '496 Patent. And on May 8, 2008, Pamlab through Crowell & Moring and Ross commenced this action against Nexgen asserting claims under the '496 Patent.

It is disputed whether Ross continued to represent Nexgen after January 11, 2008, when he joined Crowell & Moring. Ross states that he did not. Declaration of C. Randolph Ross ("Ross Decl.") [Doc. #60-2] at ¶¶39 and 44. ~~Pamlab~~ *Nexgen* argues that he did, at least until March 26, 2008, when he sent an e-mail to ~~Pamlab~~ *Nexgen* stating:

> I thought we should provide this clarification, to make sure that everyone understands the current attorney-client relationships.
>
> Buchanan Ingersoll & Rooney has an attorney-client relationship with both Breckenridge <u>and</u> Nexgen. However, Crowell & Moring (including myself and Terry Rea as of January 14) has an attorney-client relationship only with Breckenridge, <u>NOT</u> with Nexgen.

Statutory Declaration of Nicholas Licato ("Licato Decl.") at Exh. C [Doc. # 55-5].

The issue of when Ross terminated his representation of Nexgen is muddied by the nature of that representation. Nexgen's engagement letter was with the Buchanan Ingersoll firm, and not with Ross personally, Licato Decl. at Exh. A [Doc. # 55-4], although Ross is identified in the engagement letter as one of the "attorneys in the Firm principally responsible for the Client's matters." <u>Id</u>. Ross was not required to file a motion to withdraw from his representation in the Breckenridge litigation because only Breckenridge (and not Nexgen) was a party to that action, and Ross continued in his representation of Breckenridge. Ross Decl. [Doc. # 60-2] at ¶¶18, 39, and 43.

## II.

Whether Ross continued to represent Nexgen after he joined Crowell & Moring on January 11, 2008, is important because the standard for disqualification of a lawyer depends on whether he is representing an interest adverse to a former client or a present client.  Rule 1.9 of the Colorado Rules of Professional Conduct governs relationships with <u>former clients</u> and prohibits a "lawyer who has formerly represented a client in a matter [from] thereafter represent[ing] another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing."  Colo. R. Prof. C. 1.9(a).[3]  Thus, only if the previous and present representations are "substantially related" does the new representation, adverse to a former client, create a conflict.

Rule 1.7, Colo. R. Prof. C., governs relationships with <u>present clients</u>.  Rule 1.7 is more stringent, and provides that a lawyer cannot represent a client if there is a concurrent conflict of interest with another existing client.  A concurrent conflict of interest exists when:

> (1)  the representation of one client will be directly adverse to another client; or
>
> (2)  there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

Colo. R. Prof. C. 1.7(a)(1) and (2).

---

[3]The District of Colorado has adopted the Colorado Rules of Professional Conduct as its standard of professional conduct, with certain exceptions not applicable here. D.C.COLO.LCivR 83.4

4

Nexgen does not contend that Ross' present representation of Pamlab is substantially related to his former representation of Nexgen, nor does it contend that it disclosed to Ross any confidential information that is material to his current representation of Pamlab. The sole basis for Nexgen's Motion to Disqualify is the contention that Ross represented Pamlab and Nexgen at the same time, resulting in a concurrent conflict in violation of Rule 1.7(1)(a).

In particular, Nexgen relies on the "hot potato doctrine" as necessitating the disqualification of Ross and Crowell & Moring.[4]  "The 'Hot Potato Doctrine' has evolved to prevent attorneys from dropping one client like a 'hot potato' to avoid a conflict with another, more remunerative client."  <u>Santacroce v. Neff</u>, 134 F. Supp. 2d 366, 367 (D. N.J. 2001).  As the court explained in <u>ValuePart, Inc. v. Clements</u>, 2006 WL 2252541 *2 (N.D. Ill. Aug. 2, 2006):

> When a lawyer or law firm suddenly finds itself in a situation of simultaneously representing clients who either are presently adverse or are on the verge of becoming adverse, it may not simply drop one client like a "hot potato" in order to treat it as though it were a former client for the purpose of resolving a conflict of interest. . . .
>
> A lawyer's withdrawal from representing a client only renders the client a former client when: (1) it occurs at a time when the lawyer and the client had contemplated the end of the representation; and (2) the lawyer's primary motivation for terminating the relationship was not his desire to represent the new client.

"Such behavior is unethical as it violates attorneys' duty of loyalty."  <u>Local Union 1332 v. Int'l Longshoremen's Ass'n</u>, 909 F. Supp. 287, 293 (E.D. Pa. 1995).

---

[4]Crowell & Moring must be disqualified from representing Pamlab in this litigation if Ross, or any other lawyer in the firm, is subject to disqualification.  Colo. R. Prof. C. 1.10(a) (providing that "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone wold be prohibited from doing so by Rules 1.7 or 1.9," with certain exceptions not applicable here).

Nexgen argues that it has been subjected to hot potato treatment based on the following:

> While Ross may have technically terminated his representation of Nexgen prior to suing it, he did so in direct contemplation of filing the Pamlab suit. While actively representing Nexgen and Breckenridge, Ross began representing Pamlab against other generic vitamin manufacturers, suing them for the identical causes of action he now presses in this case against Nexgen. There can be little doubt that during the Cura litigation, Ross learned who the other competitors were that Pamlab soon planned to sue. There also can be little doubt that Ross terminated representation of Nexgen in order to sue Nexgen just six weeks later.

Motion to Disqualify [Doc. # 55] at p.9.

### III.

A motion to disqualify an attorney rests in the sound discretion of the trial court. <u>World Youth Day, Inc. v. Famous Artists Merchandising Exchange, Inc.</u>, 866 F. Supp. 1297, 1301 (D. Colo. 1994). Nexgen, as the moving party, bears the burden of establishing the grounds for disqualification. <u>Id</u>. at 1299. "The party seeking disqualification. . . must provide the court with specific facts to show that disqualification is necessary and he cannot rely on speculation or conjecture." <u>Funplex Partnership v. Federal Deposit Ins. Corp.</u>, 19 F. Supp. 2d 1201, 1206 )D. Colo. 1998).

Motions to disqualify must be viewed with caution. As the court noted in <u>Sequa Corp. v. Lititech, Inc.</u>, 807 F. Supp. 653, 659 (D. Colo. 1992):

> [I]n reviewing a motion to disqualify, a court must consider whether the motion was filed to gain a tactical advantage in the litigation. Motions to disqualify often pose the very threat to the integrity of the judicial process that they purport to prevent. Such Motions can be misused to harass opposing counsel, or to intimidate an adversary into accepting settlement.

(Internal quotations and citations omitted.)

Finally, a violation of a disciplinary rule does not automatically result in disqualification. World Youth Day, 866 F. Supp. at 1303. Instead, a court must determine whether the litigation can be conducted with fairness to all parties or whether the misconduct taints the trial or the legal system. Id.

IV.

When ruling on a motion to disqualify counsel, I must make specific findings and conclusions. Merrill Lynch Business Financial Services, Inc. v. Nudell, 239 F. Supp. 2d 1170, 1171 (D. Colo. 2003). The use of those findings is restricted only to the decision on the motion to disqualify, however, and the parties are not bound by them for any other purpose in the litigation. Id.

Here, I must determine when Ross' representation of Nexgen ended. Ross claims that his representation of Nexgen ended effective January 11, 2008, when he resigned from the Buchanan Ingersoll firm. That is consistent with a strict application of the Joint Engagement Letter, Licato Decl. at Exh. A [Doc. # 55-4], which states that "Buchanan Ingersoll & Rooney will provide legal services to [Nexgen and Breckenridge] in connection with the defense of the [Schering-Plough litigation]." Because the engagement was of the firm and not any particular lawyer, Ross could have no continuing responsibility under the engagement letter after he resigned from Buchanan Ingersoll.

Nexgen argues that Ross' representation did not end until March 26, 2008, when he sent his e-mail captioned "Important Clarification about Representation of Nexgen." Licota Decl. at Exh. C [Doc. # 55-6]. In support of its contention, Nexgen points to three factors. First, Nexgen notes that its first notice of Ross' alleged termination of his representation was the March 26 e-

mail.

Second, Nexgen argues that Ross actually provided legal services to Nexgen after he changed law firms to Crowell & Moring. In particular, Nexgen has identified one e-mail, dated March 13, 2008, to Nexgen representatives Gary Korngold and Eugene Kim, among others, concerning the Schering-Plough litigation. Licota Decl. at Exh. B [Doc. # 55-5]. Nexgen claims that the March 13 e-mail conveyed information to it about the Schering-Plough litigation "and asked for factual information from Nexgen and Breckenridge." Motion to Disqualify at p.3. The e-mail states in its entirety:

> All--
>
> Schering-Plough is asking the court to change dismissal of its Lanham Act claims to "without prejudice."
>
> S-P argues that the court determined that this claim was premature, as the FDA had not YET officially confirmed that the Rx PEG products are misbranded and may not be marketed. They say they should be able to bring this claim again, when the FDA has officially made that determination.
>
> That seems silly to me--if and when the FDA goes through the statutory procedure to withdraws [sic] approval of the ANDAs, these products will be withdrawn from the market (or the FDA will take enforcement action). Is that not correct?
>
> - Randy

Licota Decl. at Exh. B [Doc. # 55-5].

Finally, Nexgen argues that Ross' failure to come forward with any evidence tending to show that he did not continue to represent Nexgen after he moved to Crowell & Moring may be used to infer that his representation continued. For example, Ross has not produced the Crowell & Moring engagement letter with Breckenridge, which Nexgen believes would show that Ross

continued to represent Nexgen and Breckenridge jointly.

Nexgen's evidence is inadequate to establish that Ross continued to represent it after January 11, 2008, and amounts merely to speculation and conjecture. Perhaps Ross should have promptly informed Nexgen of his resignation from Buchanan Ingersoll, but his failure to do so does nothing to alter Nexgen's engagement letter with the Buchanan Ingersoll firm to a personal engagement of Ross. There is nothing inconsistent in Ross' March 13 e-mail with the notion that Ross then represented only Breckenridge, and that his representation of Nexgen had ended. And finally, Ross' failure to disclose the Crowell & Moring engagement letter with Breckenridge does not prove Ross' continued representation of Nexgen.

Nor has Nexgen established that Ross' primary motivation for terminating his attorney-client relationship with Nexgen was his desire to represent a new client, Pamlab. Ross resigned from Buchanan Ingersoll and joined an entirely new law firm--Crowell & Moring. This is materially different from the facts presented in the hot potato cases upon which Nexgen relies where, for example, the existing firm merely seeks to terminate the representation to undertake a matter adverse to the client, <u>ValuePart</u>, 2006 WL 2252541 *1, or where a conflict develops as a result of the merger of two firms and the resulting firm attempts to choose one client over a second, adverse client. <u>Harte Biltmore Ltd. v. First Pennsylvania Bank</u>, 655 F. Supp. 419, 420 (S.D. Fla. 1987). Rather than being motivated primarily to prefer his representation of Pamlab over Nexgen, Ross' termination of his representation of Nexgen resulted from his change of law firms which, the evidence shows, was "to go with the majority of the litigation team with which I had been working, and also because I thought Crowell & Moring offered better opportunities for me." Ross Decl. [Doc. # 60-2] at ¶44.

V.

Nexgen has failed to meet its burden to show a violation of Colo. R. Prof. C. 1.9 by Ross and Crowell & Moring.  Consequently, disqualification is not appropriate.

IT IS ORDERED that the Motion to Disqualify is DENIED.

Dated January 15, 2009.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge