IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COLORADO

Civil Action No. 08-cv-00967-REB-BNB

PAMLAB, L.L.C., and METABOLITE LABORATORIES, INC.,

    Plaintiffs,

v.

HI-TECH PHARMACAL CO., INC., and NEXGEN PHARMA, INC.,

    Defendants.

_____

## DEFENDANTS' CLAIM CONSTRUCTION BRIEF
_____

Pursuant to the November 13, 2008, Scheduling Order entered in this case, Defendants Hi-Tech Pharmacal Co., Inc. and Nexgen Pharma, Inc. ("Defendants"), through their undersigned counsel, respectfully submit this Claim Construction Brief for the Court's consideration.

## INTRODUCTION

This lawsuit concerns U.S. Patent Number 6,528,496 (the '496 patent), entitled "Compositions treating, preventing or reducing elevated metabolic levels." The '496 patent was granted on March 4, 2003, and lists as inventors Drs. Robert Allen and Sally Stabler ("the Inventors"). A copy of the '496 patent is attached as Exhibit A.

The '496 patent covers a combination of vitamins that have been marketed for decades: folic acid, vitamin $B_{12}$, and vitamin $B_6$.[1] Claim 10 is exemplary, and recites:

> 10. An oral vitamin formulation, comprising approximately 2 mg vitamin $B_{12}$, 0.4-10.0 mg folic acid, and further comprising 5-75 mg vitamin $B_6$.

As can be seen, the claim covers an oral vitamin formulation that includes 2 mg of vitamin $B_{12}$, 0.4-10.0 mg of folic acid, and 5-75 mg of vitamin $B_6$.

The only term that the parties ask the Court to interpret is "oral vitamin formulation." The parties' proposed constructions are presented below:

| Plaintiffs | Defendants |
|---|---|
| "A vitamin formulation intended to be administered by or through the mouth." | "A product capable of being administered orally, without regard to its intended route of administration." |

Revised Joint Claim Construction Chart, Exhibit B. Essentially, the Plaintiffs urge a construction that is based on the intent of the user. The Defendants urge a construction that is based on the structural capacity of the formulation.

---

[1] Vitamin $B_{12}$ is often referred to as cobalamin and cyanocobalamin. Vitamin $B_6$ is often referred to as pyridoxine and pyridoxine HCl. Folic acid is often referred to as folate.

The parties have agreed to the meanings of "comprises" and "approximately," and Defendants ask the Court to enter this agreement by stipulation in the record. For the Court's convenience, a Revised Joint Claim Construction Chart, which reflects the parties' agreement on the meaning of "comprises" and their recent agreement on the meaning of "approximately," is attached hereto in Exhibit B.

## HISTORY OF THE '496 PATENT

The '496 patent was granted on March 4, 2003, after a series of four prior applications spanning more than a decade. The patent describes blood tests for measuring serum metabolites, and methods of administering combined formulations of vitamin $B_{12}$, folic acid and vitamin $B_6$ to lower these metabolites. See abstract. The patent includes just one example of how this combination formulation works. In this example, which the patent describes as a "new study" in col. 8, lines 13-23, the Inventors administered "weekly injections of a multi-vitamin preparation containing 1.0 mg $B_{12}$, 1.1 mg folate, and 5 mg $B_6$," and measured serum metabolites in the patients to see how they responded to this administration. See Example 2 at col. 8, line 62 through col. 9, line 60. The '496 patent does not contain any examples in which this vitamin combination was administered orally.

While the Inventors represented that Example 2 described a "new study," in fact the injectable preparation used in this Example had been marketed in Europe for decades. See pages 97-98 of "Deposition of Robert H. Allen, M.D., August 11, 2005", attached as Exhibit C. As Dr. Allen acknowledged in his deposition:

> Q [BY MR. SKAKUN]  …  Where does [this example] tell [the Patent Office] that [the formulation used in this example] was a commercially available product that had been in use for decades before?
>
> …
>
> A [BY DR. ALLEN]  It doesn't say that.

Exhibit C at page 117, lines 2-6.  The Inventors never disclosed the European formulation to the Examiner as prior art, and never informed the Examiner that the Inventors had not themselves invented the formulation used in Example 2.[2]

Dr. Allen rationalized this failure based on the fact that the patent described an oral preparation, as opposed to an injectable preparation.  As he stated in his deposition:

> Q [BY MR. SKAKUN]  If you thought it important enough to - - to report to [the Patent Office] the results of patients treated with these injections, why didn't you think it was important enough to tell them that this - - this product had been available for decades?
>
> A [BY DR. ALLEN]  It didn't occur to me, and I think if it had, I wouldn't have thought it was relevant because what my - - my patent described were not parenteral preparations, but they were oral preparation.

Exhibit C at page 117, lines 7-17.  Dr. Allen's *post-hoc* rationalization is inconsistent with his arguments to the Patent Office and the reasons the Patent Office gave for granting the '409 patent.  The Inventors never distinguished between oral and injectable formulations in their arguments to the Patent Office.  To the contrary, they secured the '496 patent by convincing the Examiner that the prior art taught away from combining vitamin $B_{12}$, vitamin $B_6$ and folic acid in a single formulation, without regard to the type of

---

[2] This European formulation was developed by Dr. Reiner Riezler, and forms the basis of Dr. Riezler's claim of co-inventorship of the '496 patent that is currently before Judge Matsch in <u>Riezler v. Allen</u>, Civil Action No. 08-cv-00332-RPM.

formulation, because a combined formulation would be wasteful, dangerous and suboptimal. As the Inventors explained in a September 18, 2002 Information Disclosure Statement:

> Standard References Teach That a Combination Formulation is "Wasteful," "Dangerous," and "Suboptimal".

See Exhibit D at page HTL-0000868 (formatting omitted).

The "Standard References" cited by the Inventors primarily describe injectable administrations because, as one reference put it, "no FDA-approved oral vitamin $B_{12}$ preparation in this dose range is [even] available in the United States." Winetrobe's Clinical Hematology, 1993 ("*Winetrobe's*") at p. 778, top of left column. (Copy in Exhibit E). This reference does discuss oral administration of vitamin $B_{12}$, but it does so only to explain how this can be accomplished with an injectable preparation. According to *Winetrobe's*, vitamin $B_{12}$ can be administered orally by pouring "injectable preparations … [into] fruit juice." See Exhibit E at page 778, top of left column.

Never having heard any reasons for distinguishing oral and injectable administrations, and having been misled into believing that the injectable preparation in the examples was "new," the Examiner accepted the Inventors' arguments and eventually allowed the application. In his Reasons for Allowance the Examiner did not draw any distinction between oral and injection formulations. Rather, he simply stated that:

> Although it is normally obvious to combine multiple treatments for a disease or disorder to create a more effective treatment, such was not the case in the combination of folate and vitamin $B_{12}$ in the present case. Rather, in this case, the art teaches away from the combination in order to

avoid potential, and severe, effects of not correctly treating vitamin deficiencies.

See Exhibit D at pages HTL-0000958-959.

## ARGUMENT AND CITATION OF AUTHORITY

I. The intrinsic record supports Defendants' construction.

One of the most important sources to consult when construing patent claims is the intrinsic record of the patent, including the text of the patent (the "specification"), and the record of prosecution at the Patent Office (the "file history"). See *United States v. Adams*, 383 U.S. 39 at 48-49 (1966) ("[w]hile the claims … limit the invention, and specifications cannot be utilized to expand the patent monopoly, … claims are to be construed in the light of the specifications and both are to be read with a view to ascertaining the invention."); *Graham v. John Deere Co.*, 383 U.S. 1 at 33 (1966) ("It is, of course, well settled that an invention is construed not only in the light of the claims, but also with reference to the file wrapper or prosecution history in the Patent Office."); *Vitrionics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("the record before the Patent and Trademark Office is often of critical significance in determining the meaning of the claims").

The intrinsic record in this case indicates that there is no patentable difference between a formulation "intended for oral administration" and a formulation "intended for intravenous administration." To the contrary, medical professionals commonly administered vitamin B12 orally, before the current invention, simply by pouring

injectable preparations into the fruit juice of their patients.[3]  In addition, the '496 patent was granted based on examples that describe nothing except intravenous administrations[4] and inventor arguments and a Reasons for Allowance that draw no distinction between oral and intravenous administrations.[5]  The claims of the '496 patent make no effort to distinguish between the structure of an oral preparation and the structure of an injectable preparation, and neither does the prior art relied upon during the prosecution of the '496 patent.

This evidence is powerful proof that the claims are not limited to formulations intended for oral administration, and that they extend to all formulations that are capable of oral administration.  See *Astrazenaca AB v. Mutual Pharmaceutical Co., Inc.*, 384 F.3d 1333, 1340 (Fed. Cir. 2004) ("the patentee's choice of preferred embodiments [as in the examples] can shed light on the intended scope of the claims."); *Ekchian v. Home Depot, Inc.*, 104 F.3d 1299, 1303-04 (Fed. Cir. 1997) ("An argument [accepted by an Examiner] which purports to distinguish an invention from the prior art thus may affect the scope of the patent ultimately granted.").

---

[3] Exhibit E at page 778, top of left column. See also, "*Improvisation revisited.  Oral cyanocobalamin without intrinsic factor for pernicious anemia*", Crosby WH, Arch Intern Med 140:1582, 1980 (attached in Exhibit F) (describing fruit juice oral administration of injectable preparation of vitamin $B_{12}$ ).

[4] See Exhibit A, Example 2 at column 9, lines 41-45 ("weekly injections of a multi-vitamin preparation containing 1.0 mg $B_{12}$, 1.1 mg folate, and 5 mg $B_6$"); Example 3 at column 10, lines 16-20 ("weekly parenteral cyanocobalamin injections (1,000 μg IM) for 8 weeks, followed by monthly injections"); Example 4 at column 11, lines 50-53 ("Parenteral administration of $B_{12}$ 1 mg per week for 8 weeks").

[5] Exhibit D at pages HTL-0000958-959.

Where, as here, the patent was granted without reference to the preamble's recitation of "oral formulations," and the body of the claim describes a structurally complete formulation, any intended use that might otherwise be inferred from the preamble does not serve to limit the claim. *Intirtool, Ltd. v. Texar Corp.*, 369 F.3d 1289, 1295 (Fed. Cir. 2004) ("if the body of the claim 'describes a structurally complete invention such that deletion of the preamble phrase does not affect the structure or steps of the claimed invention,' the preamble is generally not limiting unless there is 'clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art'" (quoting *Catalina Mktg., Int'l v. Coolsavings.com*, 289 F.3d 801, 808-09 (Fed. Cir. 2002)).

II.  A composition of matter is defined by its structural features or components, not its intended use.

The Defendants' proposed construction is also improper because compositions of matter are defined by their structural components, not their intended use. It is a fundamental patent law principle that "a preamble will not be considered a limitation if 'the preamble merely states a purpose or intended use and the remainder of the claim completely defines the invention'." 3 Donald S. Chisum, *Chisum on Patents* § 8.06[1][d] (2007) (quoting *Marston v. J.C. Penney Co.*, 353 F.2d 976, 986 (4th Cir. 195) *cert. denied*, 385 U.S. 974 (1966)), enclosed as Exhibit G at page 8-201. See also *Rowe v. Dror*, 112 F.3d 473, 487 (Fed. Cir. 1997) ("Where a patentee uses the claim preamble to recite structural limitations of his claimed invention, the PTO and courts give effect to that usage. Conversely, where a patentee defines a structurally complete invention in

the claim body and uses the preamble only to state a purpose or intended use for the invention, the preamble is not a claim limitation").

A "composition of matter," like that claimed by the '496 patent, is defined by its structural components or ingredients. If the language used in the claim does not elucidate the structure of the composition, then it does not limit the claim. See MPEP[6] 2111.04, Exhibit H at page 2100-46 ("Claim scope [in a composition of matter claim] is not limited by claim language … that does not limit a claim to a particular structure"). If the inventor wishes to claim an intended use of the composition, he or she may claim the method, but the method must be defined by the steps by which it is practiced. Id. ("Claim scope [in a method of use claim] is not limited by claim language that … does not require steps to be performed").

Thus, if the term "oral vitamin formulation" is to have any meaning at all, it must help define the structure of the formulation. As stated by the Patent Office in MPEP 2111.02:

> During examination, statements in the preamble reciting the purpose or intended use of the claimed invention must be evaluated to determine whether the recited purpose or intended use results in a structural difference (or, in the case of process claims, manipulative difference) between the claimed invention and the prior art. If so, the recitation serves to limit the claim.

Exhibit H at page 2100-43, top of left column.

---

[6] Manual of Patent Examining Procedure (rev. July 2008). A copy of section 2111 is enclosed as Exhibit G hereto. The entire MPEP is available online at: http://www.uspto.gov/web/offices/pac/mpep/index.html.

The Plaintiffs' proposed construction would subvert these principles of patent claiming and allow a claim to define a composition by its intended use. This it cannot do. As the MPEP makes clear, the validity of a patent claim for a composition of matter is judged based on the "structural differences" between the claimed composition and the compositions described in the prior art. By resorting to the intended use of the formulation, Plaintiff has added nothing of structural or patentable significance to the interpretation of this term.

In contrast, Defendants urge a construction that defines the composition by its function, *i.e.* its capacity for oral administration. As described in MPEP 2173.05(g) (attached as Exhibit I), functional limitations can be used to claim a particular structure, even though they "define something by what it does, rather than what it is." Exhibit I, page 2100-226 at bottom of first column. An example of such a limitation can be found in *In re Barr*, 444 F.2d 588 (CCPA 1971), wherein it was held that the limitation used to define a radical on a chemical compound as "incapable of forming a dye with said oxidizing developing agent" although functional, was perfectly acceptable because it set definite boundaries on the patent protection sought. Just as the claim in *In re Barr* defined a chemical compound by its functional capacity, the formulations claimed in the '496 patent should be defined by their functional capacity.

III.  Principles of patent validity further counsel for Defendants' proposed construction.

One of the main issues in this case is whether the injectable preparation that the Inventors described in Example 2, which they characterized as "new" and claimed as

their own, renders the '496 patent invalid because in truth it was a prior art formulation. As Dr. Allen's testimony makes clear, the Defendants' seek to minimize the significance of this prior art by limiting their claims to formulations "intended for oral administration," but this effort conflicts with well-established principles of patent validity.

The Federal Circuit's decision in *In re Schreiber*, 128 F.3d 1473, 1477 (Fed. Cir. 1997) is instructive. The claim at issue in *In re Schreiber* covered "a device for dispensing popped popcorn," defined by a "conical shape." Id. at 1475. The Federal Circuit affirmed a rejection of the claim based on a prior art conical spout for "dispensing oil from an oil can." Id. The fact that the prior art did not mention the use of the conical spout for dispensing popcorn did not matter to the Court because the oil spout was also "capable of functioning to dispense kernels of popped popcorn in the manner set forth in claim 1." Id. at 1478.

As *In re Schreiber* makes clear, the intended use of a product does not impart any patentable significance when evaluating the novelty of a composition, because it has no structural significance. See also *In re Spada*, 911 F.2d 705, 708 (Fed. Cir. 1990) ("The discovery of a new property or use of a previously known composition, even when that property and use are unobvious from prior art, can not impart patentability to claims to the known composition."); *Titanium Metals Corp. of Am. v. Banner*, 778 F.2d 775, 782 (Fed. Cir. 1985) (composition claim reciting a newly discovered property of an old alloy did not satisfy section 102 because the alloy itself was not new); *In re Pearson*, 494 F.2d 1399, 1403 (CCPA 1974) (intended use of an old composition does not render composition claim patentable); *In re Zierden*, 411 F.2d

1325, 1328 (CCPA 1969) ("[M]ere statement of a new use for an otherwise old or obvious composition cannot render a claim to the composition patentable.")

A construction of "oral vitamin formulation" should not be imposed that restricts the ability of Defendants to rely on structurally identical prior art to invalidate Plaintiffs' claims.

## CONCLUSION

Defendants respectfully request that the Court construe "oral vitamin formulation" to mean: "A product capable of being administered orally, without regard to its intended route of administration."

Dated this 30th day of March, 2009.

                    s/Clark G. Sullivan
By:  Clark G. Sullivan
      clark.sullivan@agg.com
      Geoffrey K. Rogers
      geoff.rogers@agg.com
      Arnall Golden Gregory, LLP
      171 17th Street, N.W. #2100
      Atlanta, GA 30363
      Ph: 404-873-8512
      Fax: 404-873-8513
      *Attorneys for Defendant Hi-Tech Pharmacal Co., Inc. and Nexgen Pharma, Inc.*

      Hugh Q. Gottschalk
      gottschalk@wtklaw.com
      Evan Bennett Stephenson
      stephenson@wtklaw.com
      Wheeler Trigg Kennedy, LLP
      1801 California Street #3600
      Denver, CO 80202
      Ph: 303-244-1800
      Fax: 303-244-1879
      *Attorneys for Defendants Hi-Tech Pharmacal Co., Inc. and Nexgen Pharma, Inc.*

CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2009, I caused the foregoing Defendants' Claim Construction Brief to be filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

- **Aaron P. Bradford**
  abradford@hkh-law.com,sgunter@hkh-law.com,misaksen@hkh-law.com,lhammock@hkh-law.com
- **Bruce D. DeRenzi**
  bderenzi@crowell.com
- **Michael Patrick Dulin**
  mdulin@hkh-law.com,sgunter@hkh-law.com,misaksen@hkh-law.com,lhammock@hkh-law.com
- **Hugh Q. Gottschalk**
  gottschalk@wtklaw.com,hart@wtklaw.com,gottesfeld@wtklaw.com
- **Geoffrey K. Rogers**
  geoffrey.rogers@agg.com
- **Benjamin Freedman Sidbury**
  ben.sidbury@alston.com,dina.busey@alston.com
- **Evan Bennett Stephenson**
  stephenson@wtklaw.com,wallace@wtklaw.com
- **Clark Gerald Sullivan**
  clark.sullivan@agg.com,pamela.mackey@agg.com,andi.gossmann@agg.com

        s/Clark G. Sullivan by Janean Hart
By:  Clark G. Sullivan
      clark.sullivan@agg.com
      Geoffrey K. Rogers
      geoff.rogers@agg.com
      Arnall Golden Gregory, LLP
      171 17th Street, N.W. #2100
      Atlanta, GA 30363
      Ph: 404-873-8512
      Fax: 404-873-8513
      *Attorneys for Defendant Hi-Tech Pharmacal Co., Inc. and Nexgen Pharma, Inc.*